ORAL ARGUMENT NOT YET SCHEDULED

**No. 25-5066**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

*Defendants-Appellees*.

————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00465-TNM, Judge Trevor N. McFadden

————————

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR
INJUNCTION PENDING APPEAL
AND FOR EXPEDITED APPEAL ON THE MERITS**

————————

William Quinn
Shannon Eckman
UNITED STATES CONFERENCE
OF CATHOLIC BISHOPS
3211 Fourth Street, N.E.
Washington, D.C.  20017
(202) 541-3300
WQuinn@usccb.org



*Counsel for Plaintiff-Appellant*

Dhananjay Manthripragada
Nick Harper
David W. Casazza
Connor P. Mui
Aly Cox
Laura Stanley
Hunter Mason
Audrey Payne
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036-4504
(202) 955-8500
DCasazza@gibsondunn.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ii
TABLE OF AUTHORITIES ........................................................ iii
INTRODUCTION ......................................................................1
STANDARD OF REVIEW ...........................................................1
ARGUMENT............................................................................2

    I.   At a Minimum, This Court Should Enjoin the Government
        to Comply with the Refugee Act ....................................................2

    II.  This Court Also Should Enjoin the Funding Suspension
        and Termination............................................................................7

    III. Irreparable Harm and the Equities Favor Relief ......................13

CONCLUSION .........................................................................15
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................................ 11

*Alpine Sec. Corp. v. FINRA*,
  121 F.4th 1314 (D.C. Cir. 2024) ........................................................... 13

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ................................................................................ 3

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) .............................................................................. 10

*Ctr. for Auto Safety v. Dole*,
  846 F.2d 1532 (D.C. Cir. 1988) ............................................................. 12

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ........................................................ 1, 13

*Collins v. Yellen*,
  594 U.S. 220 (2021) .............................................................................. 10

*Crowley Gov't Servs., Inc. v. GSA*,
  38 F.4th 1099 (D.C. Cir. 2022) .............................................................. 8

*CSL Plasma Inc. v. CBP*,
  33 F.4th 584 (D.C. Cir. 2022) ............................................................ 4, 5

*CSX Transp., Inc. v. Williams*,
  406 F.3d 667 (D.C. Cir. 2005) ................................................................ 2

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ................................................................ 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................... 5

*In re Henry M. Jackson, U.S. Senate*,
  B-200685, 1980 WL 14499 (Comp. Gen. Dec. 23, 1980) ..................... 11

*Kidwell v. Dep't of Army*,
  56 F.3d 279 (D.C. Cir. 1995) ................................................... 9

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ................................................ 2, 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ......................................................... 4, 10

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ........................................................ 11, 12

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ................................................. 3

*Nat'l Council of Nonprofits v. OMB*,
  2025 WL 597959 (D.D.C. Feb. 25, 2025) ...................................... 14

*Perry Capital LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ................................................. 8

*Physicians for Soc. Resp. v. Wheeler*,
  956 F.3d 634 (D.C. Cir. 2020) ............................................ 12, 13

*P.J.E.S. ex rel. Francisco v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) ........................................... 14

*Pol'y & Rsch., LLC v. HHS*,
  313 F. Supp. 3d 62 (D.D.C. 2018) ............................................ 12

*Ramah Navajo Sch. Bd., Inc. v. Babbitt*,
  87 F.3d 1338 (D.C. Cir. 1996) ............................................... 12

*Sharp v. Weinberger*,
   798 F.2d 1521 (D.C. Cir. 1986) ................................................ 8

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ........................................ 3, 4, 8

*Tootle v. Sec'y of the Navy*,
   446 F.3d 167 (D.C. Cir. 2006) ............................................ 10

*Transohio Sav. Bank v. Director, OTS*,
   967 F.2d 598 (D.C. Cir. 1992) ........................................ 3, 8, 9

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) ........................................................ 6

**Statutes**

2 U.S.C. § 684 ........................................................................ 11

2 U.S.C. § 687 ........................................................................ 10

5 U.S.C. § 703 .......................................................................... 3

5 U.S.C. § 705 .......................................................................... 3

5 U.S.C. § 706 .......................................................................... 3

8 U.S.C. § 1522 ........................................................ 1, 4, 5, 6, 12, 14

# INTRODUCTION

USCCB's preliminary-injunction motion sought to (1) enjoin the suspension and termination of USCCB's cooperative agreements, and (2) enjoin the defendants to comply with the Refugee Act, 8 U.S.C. § 1522. Dkt. 30-1. The district court didn't consider the latter—failing to perform the required claim-by-claim analysis—and the government all but concedes Article III jurisdiction over that claim. Because USCCB's Refugee Act claim is likely to succeed, this Court should, at the very least, enjoin defendants to fulfill their resettlement-assistance obligations under that Act.

This Court should also enjoin the unlawful funding suspension and termination. The Tucker Act doesn't bar this claim, as neither the source of the right nor the relief sought are contractual. The district court also erred, the government acknowledges, by considering only the relief sought. All preliminary-injunction factors favor relief.

# STANDARD OF REVIEW

USCCB needn't show that the district court abused its discretion. That standard applies to "a district court's weighing of the four preliminary injunction factors." *Chaplaincy of Full Gospel Churches v. England*,

1

454 F.3d 290, 297 (D.C. Cir. 2006).  The district court didn't weigh the factors.  It concluded that it lacked jurisdiction—a "question[] of law" reviewed "de novo." *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005).  After correcting that error, this Court "can independently grant an injunction after considering the proper factors." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016).

## ARGUMENT

## I.     At a Minimum, This Court Should Enjoin the Government to Comply with the Refugee Act

USCCB's preliminary-injunction motion sought an order enjoining defendants to "carry out their obligations concerning initial resettlement assistance under the Refugee Act."  Dkt. 30-1; *accord* Mot.7; Dkt. 29 at 40.  Such an order wouldn't reinstate USCCB's cooperative agreements; it would simply require the government to provide statutorily-mandated refugee services in *some* permissible manner.

The district court didn't address its jurisdiction to order compliance with the Refugee Act, and the government all but concedes jurisdiction.  Regardless of whether this Court has jurisdiction to enjoin the suspension and termination, the Court can and should enjoin defendants to comply with the Refugee Act pending appeal.

2

**A.**     The district court didn't analyze whether the Tucker Act deprived it of jurisdiction to mandate compliance with the Refugee Act. *But see Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 609 (D.C. Cir. 1992) (courts "must consider [plaintiff's] claims individually"). The government all but admits "a refugee *could* bring an APA claim challenging the failure to provide assistance" under that Act. Opp.15 (emphasis added).

For good reason. USCCB's claim seeking to hold the government to its statutory obligations falls squarely within the jurisdiction of Article III courts under the APA, 5 U.S.C. §§ 703, 705, 706(1), 706(2)(C), and federal courts' equitable powers to enjoin "violations of federal law by federal officials," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The claim isn't subject to exclusive Tucker Act jurisdiction because the "source of the right[]" underlying the claim and "type of relief sought" are statutory, not contractual. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The source of the right is the Refugee Act; the requested relief is an order mandating statutory compliance.

USCCB's cooperative agreements have no bearing on this claim. Unlike in *Spectrum Leasing Corp. v. United States*, Opp.12, the "right to

3

these payments"—which may flow either to USCCB or directly to refugees—"is created in the first instance" by the Refugee Act, *not* "the contract." 764 F.2d 891, 894 (D.C. Cir. 1985).

**B.**    Rather than backfill the district court's Tucker Act analysis, the government argues (Opp.17-18) that USCCB isn't within the Refugee Act's zone of interests—an argument raised in a one-sentence footnote and unaddressed below. Dkt. 25 at 21 n.3. But the zone-of-interests standard is "not 'especially demanding.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). "Under this 'lenient' test, 'the benefit of any doubt goes to the plaintiff,' and 'the test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue.'" *CSL Plasma Inc. v. CBP*, 33 F.4th 584, 589 (D.C. Cir. 2022) (quoting *Lexmark*). USCCB easily satisfies that test.

The Refugee Act's text demonstrates that resettlement agencies are central to its resettlement scheme. The Act contemplates that the government will assign refugees to private resettlement agencies like USCCB. 8 U.S.C. § 1522(b)(1)(A). It also requires the government to

4

consult with those agencies about the "intended distribution of refugees" when "develop[ing] and implement[ing] … policies and strategies" for "placement and resettlement." 8 U.S.C. § 1522(a)(2)(A)-(B). Resettlement agencies in turn have invested in infrastructure to provide services and taken on statutory, contractual, and moral obligations to assist the refugees. Organizations with "substantial investments" in refugee resettlement are squarely positioned to enforce the Act's funding obligations. *CSL Plasma*, 33 F.4th at 591.

The government rightly doesn't dispute USCCB's Article III standing to enforce the Refugee Act. The government's violation of the Act imposes ongoing injuries to USCCB. *See infra* at 13-14. An order requiring the government to comply with Section 1522 "likely" would "redress[]" USCCB's injuries because the most likely way for the government to assist refugees would be to continue its four-decade partnership with USCCB. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Even if the government, for the first time, provided services directly to USCCB's refugees, that would "'effectuate a

partial remedy'" by reducing USCCB's mission-based injuries—"sat-isf[ying] the redressability requirement." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021).

**C.**    On the merits, the government barely resists the conclusion that it's violating the Refugee Act.  In one citation-less paragraph, it ar-gues that the Act doesn't require initial-resettlement assistance at all. Opp.22.  But the government offers no response to USCCB's arguments from statutory text and context that Section 1522(a)(1)(A)'s command— the government "shall" provide services and help refugees "become effec-tively resettled as quickly as possible"—applies to all refugees "assist[ed] under this section," including those in an initial-resettlement program under Section 1522(b).  Mot.17-22.  Section 1522(b) also provides that the government "shall … insure" that refugees with certain medical condi-tions "receive appropriate and timely treatment"—an unconditional com-mand that further demonstrates the mandatory nature of this subsec-tion.  8 U.S.C. § 1522(b)(4)(d).

Thus, at a minimum, the Court should enjoin the government pend-ing appeal to comply with the Refugee Act by providing initial-resettle-ment services to the refugees in USCCB's care.

6

## II.    This Court Also Should Enjoin the Funding Suspension and Termination

**A.**    The district court erred in concluding that the Tucker Act stripped its jurisdiction to enjoin the suspension and termination. The government agrees with USCCB that *both* the source of the right *and* type of relief sought must be contractual in nature. Opp.11. The district court erred in considering only the latter. And neither is contractual here.

**1.**    The substantive rights USCCB asserts to enjoin the suspension and termination arise from federal statutes—the Refugee Act, the Impoundment Control Act, and the APA. The government, relying on *Spectrum*, contends that USCCB's rights to *payment* arise from contracts. Opp.11-12. But USCCB isn't seeking to enforce the terms of its cooperative agreements; it seeks an injunction removing unlawful barriers—imposed contrary to statute—preventing government compliance with those agreements.

This Court has repeatedly recognized that district courts are open to such claims. In *Transohio*, the Court held that "litigants may bring statutory and constitutional claims in federal district court even when

7

the claims depend on the existence and terms of a contract with the government," and found jurisdiction because the government's "breach" of plaintiffs' "contracts" was "inconsistent with federal law." 967 F.2d at 610. In *Crowley Government Services, Inc. v. GSA*, the plaintiff sought to halt government action that "interfer[ed] with payments owed … under its contract." 38 F.4th 1099, 1102 (D.C. Cir. 2022). Again, the Court found jurisdiction because the "sources of [the] claimed right" were the "statutes identified in [the] complaint," not contract. *Id.* at 1108; *see also Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (fiduciary duty "arose from" contract, but right sounded in "state corporate law"). USCCB's claims are therefore like the ones in *Sharp v. Weinberger*, where then-Judge Scalia found jurisdiction to enjoin the government from violating "regulations, statutes and the Constitution," 798 F.2d 1521, 1523 (D.C. Cir. 1986). The government has no response to these precedents.

*Spectrum* isn't to the contrary. It involved a statute that only "impose[d] procedural requirements," and the Court distinguished a Tenth Circuit case where, as here, a plaintiff sought to enjoin barriers to enforcement of a government contract that violated a statute. 764 F.2d at

8

894 & n.4.  Under the government's reading of *Spectrum*, moreover, district courts would lack jurisdiction to enjoin a policy of withholding payments under government contracts motivated by political, racial, or religious animus.  That can't be the law.

**2.**    Nor does the relief USCCB seeks bar jurisdiction.  It's true that if the suspension and termination are enjoined, USCCB's agreements would return to force.  But a district court has jurisdiction to enjoin agency action that violates statutes "even where the relief sought is an order forcing the government to obey the terms of a contract." *Transohio*, 967 F.2d at 610.  Neither the district court nor the government meaningfully engaged with this precedent.

The government claims that USCCB has no cognizable interest except for payments under the agreements.  Opp.15.  That mischaracterizes USCCB's religious mission to assist the vulnerable refugees the government assigned to it:  USCCB's interest isn't money; it's ensuring refugees receive help.  Enjoining the suspension and termination would provide "valuable non-monetary relief" by enabling USCCB to fulfill this mission—so USCCB's claims do "not implicate the Tucker Act." *Kidwell v. Dep't of Army*, 56 F.3d 279, 286 (D.C. Cir. 1995).

9

**3.** Finally, the government ignores that the Tucker Act can't exclude APA jurisdiction "when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006). While that court can grant retrospective contract damages, the government doesn't suggest it has power to set aside the termination or prospectively require the government to fund refugee-assistance programs. The Claims Court can't grant USCCB equitable relief to redress the ongoing irreparable harm to its mission, partner relationships, and organization. *See Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988).

**B.** USCCB is also likely to succeed on the merits of its claims that seek to set aside the suspension and termination.

**1.** USCCB can challenge violations of the Impoundment Control Act. Just because the Act protects Congress's institutional interests doesn't mean that USCCB's interests are only "marginally related" to it. *Lexmark*, 572 U.S. at 130. "[T]he separation of powers is designed to preserve the liberty of all the people." *Collins v. Yellen*, 594 U.S. 220, 245 (2021). While the Act grants a limited cause of action to the Comptroller General, 2 U.S.C. § 687, that mechanism neither purports to be exclusive nor erases the individual liberty interests at stake.

10

On the merits, the government assumes the Act is "irrelevant here" because the appropriations statute made funds "available until expended." Opp.14, 22-23. But "[a]ny executive branch action or inaction … is potentially subject to the Impoundment Control Act … even if the budget authority involves no-year funds." *In re Henry M. Jackson, U.S. Senate*, B-200685, 1980 WL 14499, at *1 (Comp. Gen. Dec. 23, 1980). The government argues it will still expend its appropriations for other purposes. Opp.22-23. But Section 1522 requires available funds be spent for the "specific purpose" of initial-resettlement assistance. 2 U.S.C. § 684(a). And the government doesn't dispute that its actions are policy-based, thus violating 2 U.S.C. § 684(b). *See In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013).

**2.** USCCB's APA claims are also likely to succeed. The government doesn't argue that its actions here were reasonable and reasonably explained. Instead, relying on *Lincoln v. Vigil*, 508 U.S. 182 (1993), it says those requirements don't apply because its decision to fund the initial-resettlement program is committed to agency discretion. That's wrong.

11

In *Lincoln*, Congress provided a lump-sum appropriation, and the agency used the funds to create an assistance program. *Id.* at 186. Congress didn't establish the program, so the agency had discretion to terminate its own creation. *Id.* at 194. *Lincoln* doesn't apply when a program or appropriation is *mandatory*. *See Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1344-47 (D.C. Cir. 1996). Here, Congress made refugee assistance mandatory. 8 U.S.C. § 1522. An "agency is not free simply to disregard statutory responsibilities." *Lincoln*, 508 U.S. at 193.

Nor does *Lincoln* apply when agencies cabin their own discretion by regulation. *E.g.*, *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988) ("[R]egulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review of agency action."); *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020) (similar). Regulations limiting an agency's discretion to withhold funds or terminate cooperative agreements provide meaningful standards of review. *Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 76-78 (D.D.C. 2018); *accord* Opp.20. Such cabining regulations

12

allow courts to engage in ordinary APA review, including whether an action was reasonable and reasonably explained. *Wheeler*, 956 F.3d at 643-44.

## III.  Irreparable Harm and the Equities Favor Relief

**A.**   The government's actions have irreparably damaged USCCB's organizational expertise, partner relationships, and programs—frustrating one of USCCB's core missions.  Although each injury *stems* from the funding cessation, none can be *redressed* by retroactive money damages.  *England*, 454 F.3d at 297-98.  The government insists USCCB's harm is merely financial, Opp.25, but fails to grapple with the irreparable nature of USCCB's injuries, App.34-74.

Compensatory damages can't redress the loss of employee expertise and established relationships.  Mot.24-25.  Extensive layoffs and permanent damage to partner relationships will have "crushing consequences" for USCCB's refugee-resettlement "operations," making it unrealistic to expect that it "could simply reopen its doors."  *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1329 (D.C. Cir. 2024).  Worse, USCCB is unable to assist the refugees *currently in its care*, *e.g.*, App.67—future money damages won't allow USCCB to go back in time and fulfill its religious

mission to help those refugees. The short- and long-term frustration of one of USCCB's core "mission[s]" is irreparable. *Newby*, 838 F.3d at 8.

**B.** The equities favor emergency relief. The government's actions don't implicate foreign-policy interests. The initial-resettlement program applies only to refugees already lawfully present in the United States and was deemed "domestic assistance" by Congress. 8 U.S.C. § 1522(a)(3). Executive action cannot transform a domestic-assistance program into one involving foreign affairs by fiat. And there's no "public interest" "in the perpetuation of unlawful agency action," *Newby*, 838 F.3d at 12, even if it furthers an Administration's "agenda," Opp.24.

Finally, this Court should impose no bond. Courts have "broad discretion" in determining "the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999)—including no bond or bond "'in a nominal amount,'" *P.J.E.S. ex rel. Francisco v. Wolf*, 502 F. Supp. 3d 492, 550 (D.D.C. 2020). USCCB, a nonprofit, religious organization, seeks to "vindicate important [public] rights," *id.* at 550; requiring security would undermine its right to judicial review, *Nat'l Council of Nonprofits v. OMB*, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025).

14

## CONCLUSION

This Court should grant the motion.

March 25, 2025

Respectfully submitted,

*/s/ David W. Casazza*

William Quinn
Shannon Eckman
UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS
3211 Fourth Street, N.E.
Washington, D.C. 20017
(202) 541-3300
WQuinn@usccb.org

Dhananjay Manthripragada
Nick Harper
David W. Casazza
Connor P. Mui
Aly Cox
Laura Stanley
Hunter Mason
Audrey Payne
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
DCasazza@gibsondunn.com

15

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it contains 2596 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

March 25, 2025

*/s/ David W. Casazza*
David W. Casazza
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
DCasazza@gibsondunn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic-filing system. I certify that all participants in this case are registered users of the Court's electronic-filing system and have thereby been served at the time of filing.

/s/ David W. Casazza
David W. Casazza
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
DCasazza@gibsondunn.com